FILED
2015 Aug-14  AM 10:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| RANDY MILAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.: |
| TRI-STATE ADJUSTMENTS | ) |
| INCORPORATED, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendant and states as follows:

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendant and its agents in its illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

2. Personal jurisdiction exists over Defendant as Defendant has the necessary minimum contacts with the State of Alabama and this suit arises out of Defendant's specific conduct with Plaintiff in Alabama. All the actions described in this suit occurred in Alabama.

3.    Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

4.    Venue is proper as Defendant does business in this judicial district.

## PARTIES

5.    Plaintiff Randy Milam (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district in Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.    Defendant Tri-State Adjustments Incorporated ("Defendant" or "Tri-State[1]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama.  It is a "debt collector" under the FDCPA.  It is incorporated in Wisconsin and has its principal place of business is in Wisconsin.

7.    Defendant Tri-State claims to collect on defaulted consumer debt.

8.    Defendant Tri-State sends collection notices to consumers, makes collection calls to consumers, and credit reports on consumers.

---

[1] "Tri-State" means Tri-State directly or through its debt collectors, employees and agents  who credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

## RECOGNITION BY CONGRESS OF THE
## WIDESPREAD ABUSE BY COLLECTORS

9.    Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

10.   Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

11.   Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

12.   15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

    (a)    There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

    (b)    Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

    (c)    **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

    (d)    Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

    (e)    It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt**

3

> **collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## FACTUAL ALLEGATIONS AGAINST TRI-STATE

### St. Vincent's Medical Bill Is Paid By Plaintiff

13.   Plaintiff used medical services of St. Vincent's in 2012 or 2013.

14.   Plaintiff did not receive a bill or call from St. Vincent's until October 2014 when St. Vincent's did finally send Plaintiff a bill.

15.   The bill was for $64.76.

16.   Plaintiff paid it by check number 832 which cleared his bank on or about October 7, 2014.

17.   This should have ended the matter.

### Defendant Tri-State First Appears On The Scene In A January 9, 2015 Collection Letter On The St. Vincent's Bill

18.   But in January 2015 a debt collector from Wisconsin, Defendant Tri-State, sent Plaintiff a collection letter dated January 9, 2015, claiming Plaintiff owed for the St. Vincent's bill.

19.   The URL for Defendant Tri-State is www.WeCollectMore.com.

20.   The amount Defendant Tri-State was collecting was $64.76.

21.     The Defendant Tri-State letter stated in relevant part:

> "The account(s) listed above have been sent to us for collections.    These past due amounts need your immediate attention.   To stop further collection activity return this notice with payment in full.
>
> This is an attempt to collect a debt.  Any information will be used for that purpose.
>
> This communication is from a debt collector."

22.     The January 9, 2015, was the first communication between Plaintiff and Defendant Tri-State.

23.     The January 9, 2015, letter failed to include the required notifications as set forth in Section 1692g of the FDCPA.

24.     The reason for this is because Defendant Tri-State does not want consumers to know that consumers have a right to dispute collection letters, particularly ones that are wrong, and that written disputes may impose a greater obligation or responsibility on Defendant Tri-State than a verbal dispute.

25.     This letter was false and harassing, as no money was owed from Plaintiff to Defendant Tri-State.

26.     Plaintiff called Defendant Tri-State after receiving the January 9, 2015 letter.

27.     Plaintiff let Defendant Tri-State know he disputed this collection account as he had already paid it before Defendant Tri-State received the account.

28. After being bounced around between Defendant Tri-State and St. Vincent's, Defendant Tri-State admitted that this was a mistake and would correct the matter immediately.

29. Plaintiff was upset by the collection letter but was relieved that Defendant Tri-State was not going to bother him again and especially that Defendant Tri-State would not credit report on Plaintiff.

**Defendant Tri-State Credit Reports On The Paid Off St. Vincent's Bill**

30. Shockingly to Plaintiff (but common in the medical debt collection industry), Defendant Tri-State not only failed to do what it promised but Defendant Tri-State credit reported against Plaintiff.

31. Plaintiff recently was looking into taking out a loan and checked his credit reports before doing so as Plaintiff is on a fixed income and thus needs exceptional credit if applying for a loan to lower the payments as much as possible.

**The False TransUnion Credit Reporting By Defendant Tri-State**

32. Plaintiff's TransUnion report, dated July 23, 2015, shows only one "negative" or "adverse" account – the one placed there by Defendant Tri-State.

33. It shows Defendant Tri-State received the account on October 29, 2014.

34. This is after Plaintiff paid St. Vincent's.

35. It shows a "zero" balance and that it is a "paid collection" – this is false as it was paid before it went to collection.

36. The reporting fails to show that the account was disputed.

37. It shows a payment date of January 15, 2015.

38. This is false as it was paid, not to Defendant Tri-State, but to St. Vincent's in early October 2014.

**The False Experian Credit Reporting By Defendant Tri-State**

39. Plaintiff's July 23, 2015, Experian report also shows only one negative account – the one from Defendant Tri-State.

40. It shows the first reporting was in January 2015.

41. This was the same month that Plaintiff disputed this with Defendant Tri-State as it had been paid directly to St. Vincent's in October 2014.

42. There is no indication of Plaintiff's dispute.

**The False Equifax Credit Reporting By Defendant Tri-State**

43. In a similar fashion, Plaintiff's July 23, 2015 Equifax report shows one negative account, Defendant Tri-State.

44. Again it shows a payment date of January 15, 2015, and does not reflect that the account was disputed.

## **August 3, 2015, Call To Defendant Tri-State To Understand Why It Is Falsely Credit Reporting On Plaintiff**

45.   On or about August 3, 2015, Plaintiff called St. Vincent's to figure out why this was still a problem.

46.   Plaintiff was told St. Vincent's could not help him and he would have to deal directly with Defendant Tri-State.

47.   So Plaintiff called Defendant Tri-State again and spoke with an employee or agent believed to be named "Adam."

48.   Defendant Tri-State admitted the reporting was wrong and that it would be taken care of and deleted from Plaintiff's reports.

49.   This is very similar to what Defendant Tri-State told Plaintiff in January before it began the false credit reporting against Plaintiff.

50.   Plaintiff has found himself in the position of so many Alabama consumers who receive confusing medical billing or no billing at all, and then when the bill is paid, consumers have to deal with debt collectors after the payment.

51.   Defendant Tri-State claims to have received the debt at the end of October, which is after it was paid.

52.   Alternatively Defendant Tri-State has claimed to receive the debt in January, 2015, which is also after the debt was paid.

53.   In any event, the debt was paid before Defendant Tri-State received the account.

54.   There is simply no excuse for Defendant Tri-State to collect on this and no excuse for Defendant Tri-State to credit report on this account.

## Motivation For Defendant Tri-State To
## Break The Law And To Falsely Credit Report

55.   The marketplace for medical collection is fierce as there is a high amount of unpaid medical debt.

56.   It is unpaid for a number of reasons – high cost of medical care, insurance billing issues, lack of ability or desire to pay, etc.

57.   So medical collection companies such as Defendant Tri-State must distinguish themselves to gain business.

58.   One way to do this is to compete on price.

59.   Another way to is to compete on effectiveness of being able to collect and to collect quickly.

60.   Defendant Tri-State has a vested interest in credit reporting on consumers, even when it knows the credit reporting is false.

61.   This is because Defendant Tri-State is seeking a competitive advantage over other collection agencies that follow the law.

62.   And a competitive advantage over other law breaking collection agencies, which leads Defendant Tri-State into a "race to the bottom" of even greater violations of the law.

63. Defendant Tri-State knows that medical billing is confusing, sporadic, and haphazard. At best.

64. So when a consumer receives a collection bill from Defendant Tri-State, it is important for Defendant Tri-State to have a "presence" or "reputation" in the marketplace for harsh credit reporting.

65. Even false credit reporting.

66. The medical bills Defendant Tri-State typically collects are smaller, under $500.

67. So if Defendant Tri-State can create a reputation among consumers for being overly aggressive in credit reporting, the consumers will be forced to pay Defendant Tri-State even when the debt is not owed, all in an attempt (feeble as it may be) to protect the consumer's credit report.

68. What happened to Plaintiff is a natural result of taking action on the mindset of Defendant Tri-State.

69. Plaintiff's situation is no surprise to Defendant Tri-State as this type of injury and damage is anticipated and expected by Defendant Tri-State.

70. While Defendant Tri-State did not succeed in wrenching money from the individual Plaintiff on a debt that was already paid, it did intentionally and deliberately damage his credit reports significantly with the placing of the collection account on his otherwise excellent credit reports.

71.   Defendant Tri-State views this as "collateral damage" that is necessary in its mission to establish itself as achieving better than average results in the marketplace of medical debt collection.

72.   This sends the message to consumers that Defendant Tri-State is not to be trifled with and that Defendant Tri-State expects to be paid when it demands to be paid.

## Two Downsides Of Defendant Tri-State's Business Model

73.   This business model has only two downsides.

74.   First, it is morally wrong to collect debt not owed and to falsely credit report.

75.   Second, it does expose Defendant Tri-State to lawsuits.

76.   The first concern is of no importance to Defendant Tri-State as it makes no claim to conducting business in a moral manner.

77.   The second concern is also of no importance as so few lawsuits ever get filed that the profits made by this type of mis-conduct greatly exceed any minor cost of being sued by consumers.

78.   It is Plaintiff's belief that the present lawsuit will help Defendant Tri-State change its business practices, at least in Alabama.

**Additional Factual Allegations Against Defendant Tri-State**

79. Defendant Tri-State has collected against Plaintiff when Plaintiff did not owe any money to Defendant Tri-State on this account, which violates the alleged agreement creating this debt as the agreement does not allow for collecting a debt that is zero from anyone, including Plaintiff.

80. Defendant Tri-State has misrepresented the debt as being owed, when it was not owed.

81. Defendant Tri-State has misrepresented the debt to Plaintiff, including the legal status of the debt, as none was owed during the time that Defendant Tri-State has been collecting on the debt.

82. Defendant Tri-State has taken action it knows is illegal including false credit reporting and collection letters and/or collection calls.

83. Defendant Tri-State knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff (and all others similarly situated) would be harassed, oppressed, and abused by the collection activities and by all other wrongful acts described in this Complaint.

84. The debt being collected is a consumer debt as defined by the FDCPA.

85. Plaintiff is a "consumer" as defined by the FDCPA.

86.   Defendant Tri-State is a "debt collector" as defined by the FDCPA as when it allegedly received the supposed debt owed by Plaintiff, the alleged debt was in default and the collecting of defaulted debt is a major part of the business of Defendant Tri-State.

87.   Defendant Tri-State has full knowledge of what it is doing by its wrongful collection activities including illegal credit reporting – it is a sophisticated debt collector and the decisions outlined in this Complaint and that will be shown through discovery were not "rogue" or "outlier" decisions but instead represent a well thought out plan and scheme to take money from Alabama consumers (including Plaintiff) that Defendant Tri-State has no right to take under state law and under the FDCPA.

88.   The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

89.   It is a practice of the Defendant Tri-State to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

90.  All actions taken by employees, agents, servants, or representatives of any type for the Defendant Tri-State were taken in the line and scope of such individuals' employment, agency or representation.

91.  At no time has Defendant Tri-State told or implied to Plaintiff that any conduct by any agent or employee of Defendant Tri-State was outside the line and scope of such employment or agency.

92.  All actions taken by the Defendant Tri-State were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

93.  Defendant Tri-State has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Tri-State is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

94.  Defendant Tri-State is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection

employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692d

95.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

96.  Section 1692d states, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

97.  Defendant Tri-State violated Section 1692d by collecting this debt as alleged in this Complaint in paragraphs 5-8 and 13-94.

98.  The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT II.

## VIOLATIONS OF THE FAIR DEBT COLLECTIONPRACTICES ACT
## 15 U.S.C. § 1692e

99.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

100.  Section 1692e prohibits, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section [and the subsections of 1692e follow]."

101.  Defendant Tri-State violated Section 1692e by collecting this debt as alleged in this Complaint in paragraphs 5-8 and 13-94.

102.  The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT III.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(2)

103.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

104. Section 1692e(2) prohibits, "The false representation of the character, amount, or legal status of any debt;"

105. Defendant Tri-State violated Section 1692e(2) by collecting this debt as alleged in this Complaint in paragraphs 5-8 and 13-94.

106. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT IV.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(8)

107. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

108. Section 1692e(8) prohibits, "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

109. Defendant Tri-State violated Section 1692e(8) by collecting this debt as alleged in this Complaint in paragraphs 5-8 and 13-94.

110. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and

credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT V.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692e(10)

111. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

112. Section 1692e(10) prohibits, "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

113. Defendant Tri-State violated Section 1692e(10) by collecting this debt as alleged in this Complaint in paragraphs 5-8 and 13-94.

114. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT VI.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692f

115. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

116. Section 1692f states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

117. Defendant Tri-State violated Section 1692f by collecting this debt as alleged in this Complaint in paragraphs 5-8 and 13-94.

118. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

### COUNT VII.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692f(1)

119. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

120. Section 1692f(1) forbids, "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

121. Defendant Tri-State violated Section 1692f(1) by collecting this debt when the account agreement never authorized collecting a debt no longer owed and as alleged in this Complaint in paragraphs 5-8 and 13-94.

122. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT VIII.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692g

123. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

124. Section 1692g states written notice must be sent to consumer informing consumer of certain rights under the FDCPA.

125. Specifically, paragraphs 5-8 and 13-94 support the 1692g claim.

126. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT IX.
## INVASION OF PRIVACY

127. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

128.  Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Tri-State violated Alabama state law as described in this Complaint in paragraphs 5-8 and 13-94 and in the paragraphs of this Count.

129.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

130.  Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

131.  Defendant Tri-State intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns

or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

132. Defendant Tri-State intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

133. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

134. The conduct of Defendant Tri-State, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Tri-State which occurred in a way that would be highly offensive to a reasonable person in that position.

135. Defendant Tri-State has continued to publicly state through credit reporting that Plaintiff owes or owed the debt to Defendant Tri-State when Defendant Tri-State knows this is untrue.

136. All of the wrongful acts described in this Complaint (paragraphs 5-8 and 13-94 and in the paragraphs of this Count) demonstrate the wrongful scheme, plan, and design of Defendant Tri-State in its campaign of improper debt collection, which has led to the Plaintiff's privacy being invaded.

137. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

138. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Tri-State.

139. All acts of Defendant Tri-State were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Tri-State is subject to punitive damages.

## COUNT X.

## NEGLIGENT HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

140. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

141. Defendant Tri-State's collectors are allowed and encouraged to break state law in order to collect debts.

142. This includes all of the violations of the law described in this Complaint in paragraphs 5-8 and 13-94 and in the paragraphs of this Count.

143. Defendant Tri-State is aware of the wrongful conduct of its collectors.

144. Defendant Tri-State negligently hired, trained, retained or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Tri-State is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

145. Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt collector which is a "leader" in the industry, with compliance employees and lawyers, could possibly allow the wrongful acts described in this Complaint to occur unless this was part of a plan to be negligent in allowing incompetent collectors to run wild and damage Plaintiff while Defendant Tri-State sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

146. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XI.

## WANTON HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

147. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

148. Defendant Tri-State's collectors are allowed and encouraged to break state law in order to collect debts.

149. This includes all of the violations of the law described in this Complaint in paragraphs 5-8 and 13-94 and in the paragraphs of this Count.

150. Defendant Tri-State is aware of the wrongful conduct of its collectors.

151. Defendant Tri-State wantonly hired, trained, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Tri-State is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

152. Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt collector which is a "leader" in the industry, with compliance employees and lawyers, could possibly allow the wrongful acts described in this Complaint to occur unless this was part of a well orchestrated design and plan of wantonly allowing

incompetent collectors to run wild and damage Plaintiff while Defendant Tri-State sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

153.   The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XII.

## INTENTIONAL HIRING, TRAINING, AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

154.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

155.   Defendant Tri-State's collectors are allowed and encouraged to break state law in order to collect debts.

156.   This includes all of the violations of the law described in this Complaint in paragraphs 5-8 and 13-94 and in the paragraphs of this Count.

157.   Defendant Tri-State is aware of the wrongful conduct of its collectors.

158.   Defendant Tri-State intentionally hired, trained, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Tri-State is thereby responsible to

the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

159. Plaintiff does not, without discovery, know the details of the incompetent hiring, training, and supervision of debt collectors but it is reasonable to infer this as there is no other explanation for how a large debt collector which is a "leader" in the industry, with compliance employees and lawyers, could possibly allow the wrongful acts described in this Complaint to occur unless this was part of an intentional well orchestrated design and plan of allowing incompetent collectors to run wild and damage Plaintiff while Defendant Tri-State sat back to reap the rewards of the wrongful conduct it had sowed. The details of this will come out in discovery.

160. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## COUNT XIII.

## WANTON CONDUCT

161. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

162. Defendant Tri-State had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

163. Defendant Tri-State had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

164. Defendant Tri-State acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint in paragraphs 5-8 and 13-94 and in the paragraphs of this Count.

165. Defendant Tri-State violated all of the duties Defendant Tri-State had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

166. It was foreseeable, and Defendant Tri-State did in fact foresee it, the each and every illegal act of Defendant Tri-State would lead and did lead to the exact type of harm suffered by Plaintiff.

167. The conduct of the Defendant Tri-State has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

**Attorney for Plaintiff**

**Serve defendant via certified mail at the following address:**

Tri-State Adjustments Incorporated
c/o CSC Lawyers Incorporating SVC Inc
150 S. Perry Street
Montgomery, Alabama 36104